# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: § <br> METROPOLITAN WATER COMPANY, § <br> LP and MET WATER VISTA RIDGE, LP, § <br> § <br> *Jointly Administered Debtors-in-Possession.* § <br> § | | CASE NO. 21-10903-hcm <br> CASE NO. 21-10904-hcm <br> *(Jointly Administered <br> under Case No. 21-10903-hcm)* |
| § <br> BLUE WATER SYSTEMS, LP and BLUE § <br> WATER VISTA RIDGE, LLC, § <br> § <br> *Plaintiffs*, § <br> § <br> VS. § <br> § <br> METROPOLITAN WATER COMPANY, § <br> LP and MET WATER VISTA RIDGE, LP, § <br> § <br> *Defendants*, § <br> § <br> VS. § <br> § <br> WILMINGTON TRUST, N.A., as Trustee § <br> for the Burleson/Milam Master Lease Trust, § <br> and BLUE WATER 130 PROJECT, LP, § <br> § <br> *Third-Party Defendants.* § | | ADVERSARY NO. 21-01050-hcm |

**EXPEDITED MOTION OF BLUE WATER SYSTEMS, LP AND BLUE
WATER VISTA RIDGE, LLC TO ABSTAIN OR, ALTERNATIVELY, TO REMAND**

TO THE HONORABLE H. CHRISTOPHER MOTT, U.S. BANKRUPTCY JUDGE:

Plaintiffs Blue Water Systems, LP ("BWS") and Blue Water Vista Ridge, LLC ("BWVR") (together, the "Blue Water Parties" or "Movants") hereby move the Court to abstain from hearing the subject matter of Adversary Case No. 21-01050-hcm (the "Adversary Proceeding") pursuant to Federal Rule of Bankruptcy Procedure 5011, 28 U.S.C. § 1334(c), and 28 U.S.C. § 1452(b). In support of this Motion, Movants would show the Court as follows:

## I. SUMMARY OF RELIEF REQUESTED

1. This Adversary Proceeding was initiated by Defendants Metropolitan Water Company, L.P. ("Met Water") and Met Water Vista Ridge, L.P. ("MWVR") (together, the "Met Water Parties", "Defendants", or "Debtors") removing to this Court an underlying state court action styled *Blue Water Systems, LP and Blue Water Vista Ridge, LLC v. Metropolitan Water Company, LP and Met Water Vista Ridge, LP, et al.,* pending in the 21st Judicial District Court, Washington County, Texas (the "State Court"), as Case No. 37,412 (the "State Court Action"). A true and correct copy of the State Court Action in the form of the most recently filed Plaintiffs' Fourth Amended Petition is attached hereto as Exhibit "1" and is incorporated herein by this reference.

2. The State Court Action was initially filed on May 8, 2020, and had been pending in the State Court for more than 18 months. The State Court Action is fully developed and was set for trial to commence on October 18, 2021, until Debtors sought and obtained a continuance of that trial date from the State Court. Notably, Debtors filed their petitions for relief commencing the underlying bankruptcy cases on the afternoon before a critical hearing in the State Court Action on several dispositive motions, including two motions for partial summary judgment filed by the Blue Water Parties, and entry of an order for sanctions against Met Water for discovery abuse.

3. In short, the State Court Action is about the Met Water Parties' deceit and mismanagement of over 1,300 groundwater leases essential to the $3.4 billion Vista Ridge project—the 142-mile pipeline project that delivers 50,000 acre-feet per year of groundwater to the San Antonio Water System. Resolution of the State Court Action is necessary to enforce the Blue Water Parties' critical property rights and contract rights required for the Vista Ridge

project and to obtain permanent injunctive relief to prevent the Met Water Parties from further interfering with those rights. The Met Water Parties are controlled by William Scott Carlson, a convicted felon with a long history of fraud, forgery, and deceit. The fully developed State Court Action is a multi-party matter involving complex issues of state law that is ready for trial and is essential to prevent Carlson and the Debtors from interfering with and damaging the Blue Water Parties' valuable property and contract rights in the Vista Ridge project.

4. Plaintiff BWVR is the owner of the leasehold rights for all groundwater leases dedicated to the Vista Ridge project. Through a series of contracts between BWVR and third-party Vista Ridge LLC, BWVR is both the Lease Administrator and the Permit Administrator for the Vista Ridge project. Debtors are not parties to those contracts. As Lease Administrator for the Vista Ridge project, BWVR initially delegated certain Vista Ridge lease management responsibilities to Debtor Met Water, including making timely payments of production royalties and related payments to landowners. BWVR timely provided all funds to Met Water necessary for these purposes, and BWVR also paid Met Water $40,000 per month as compensation for land and lease management services. Met Water repeatedly mismanaged the Vista Ridge groundwater leases, refused to follow BWVR's essential management instructions, and refused to provide BWVR with basic Vista Ridge lessor information necessary to ensure that those landowners received proper royalty payments.

5. Movants petition this Court to abstain from hearing the State Court Action, to remand the State Court Action to the State Court, and to modify the automatic stay as necessary to allow the Blue Water Parties to proceed to trial and to final judgment in the State Court to adjudicate and liquidate the Blue Water Parties' claims against the Met Water Parties. After a year and a half of litigation, the issuance of two injunctions against the Met Water Parties,

numerous discovery disputes—including sanctions against Met Water, interlocutory appeals and dispositive rulings on complex questions of state property and contract law, and numerous attempts by the Met Water Parties to shop for an alternative forum, the State Court Action should finally be allowed to proceed to trial.

## II. JURISDICTION

6. This Court has jurisdiction over the affairs of the Debtors pursuant to 28 U.S.C. § 157 and § 1334. Movants do not consent to the entry of orders in this matter.

7. The statutory predicates for the relief requested herein are Federal Rule of Bankruptcy Procedure 5011, 28 U.S.C. § 1334(c), and 28 U.S.C. § 1452(b).

## III. PROCEDURAL BACKGROUND

8. On the afternoon of November 22, 2021 (the "Petition Date"), the Met Water Parties each filed a petition for relief in this Court under Chapter 11, Subchapter V, now jointly administered as Case No. 21-10903-hcm (the "Underlying Bankruptcy Case"). The Petition Date is significant because the State Court had set a full-day hearing for the following day, November 23, 2021 (the "November 23 Hearing"), to consider, among other pretrial matters, the Blue Water Parties' request for an award of sanctions against Debtors and Carlson, and a largely dispositive motion for partial summary judgment on MWVR's claimed leases being held in trust for the benefit of BWVR. The November 23 Hearing was stayed by the Debtors' bankruptcy filing.

9. On December 3, 2021, the Blue Water Parties filed their *Motion for Relief from Automatic Stay and Request for Waiver of 30-Day Requirement Pursuant to 11 U.S.C. § 362(e)* (the "Lift Stay Motion") [Dkt. No. 29 in the Underlying Bankruptcy Case]. Prior to removal of the State Court Action to this Adversary Proceeding, the Blue Water Parties filed the Lift Stay

Motion seeking relief from this Court virtually identical to the relief sought through the instant Motion—namely, the continuation and prosecution of the State Court Action in the State Court.

10. On December 9, 2021, the Blue Water Parties filed their *Motion for Expedited Hearing to Consider the Lift Stay Motion* [Dkt. No. 32, in the Underlying Bankruptcy Case]. Both the Lift Stay Motion and the Motion for Expedited Hearing to Consider the Lift Stay Motion are currently pending before this Court in the Underlying Bankruptcy Case.

11. On December 9, 2021, at 11:17 p.m., the Debtors removed the State Court Action to this Court initiating the instant Adversary Proceeding.

## IV. FACTUAL BACKGROUND

12. The parties to the State Court Action include Movants (BWS, a Texas limited partnership, and BWVR, a Texas limited liability company), Debtors (both Texas limited partnerships), Wilmington Trust, N.A., as Trustee for the Burleson/Milam Master Lease Trust ("Wilmington Trust") (a national banking association incorporated in Delaware), and Blue Water 130 Project, LP (a Texas limited partnership). All parties have filed responsive pleadings in the State Court Action, and prior to removal, the State Court Action was docketed for trial on April 4, 2022, less than four months from the date of filing this Motion.

13. The Blue Water Parties initially filed its claims in state court on May 8, 2020 in response to the Met Water Parties' misconduct. The Met Water Parties are controlled by William Scott Carlson, who has a long history of criminal fraud,[1] forgery,[2] and deceit.[3]

---

[1] Carlson in 2002 pleaded guilty to criminal fraud of over $2 million dollars as an oil and gas landman. *See* Ex. 1, at 2, n.1.
[2] Carlson was caught in 2014 recording in the Burleson County Official Public Records a purported real property document that was the product of Carlson's forgery. *See id.* at 2, n.2.
[3] Carlson this past year obtained purported groundwater deeds from various Vista Ridge lessors by informing them they were merely signing off on the receipt of royalties. *See id.* ¶ 81.

### *The Vista Ridge Groundwater Project*

14. The Vista Ridge project is a $3.4 billion groundwater project supplying 50,000 acre-feet of groundwater per year to the San Antonio Water System ("SAWS"). *See* Ex. 1 ¶ 1. Beginning in the late 1990s, Met Water, as lessee, had leased the groundwater rights of several hundred landowners in Burleson and Milam Counties in hopes of providing a long-term water supply to a city or cities in Texas. But Met Water (controlled by Carlson) was unable to secure a contract to supply groundwater to any city. *See id.* ¶ 15.

15. Following its unsuccessful efforts to secure a long-term municipal contract, Met Water assigned to Movant BWS the sole and exclusive rights to produce and market the groundwater and groundwater rights under the leases Met Water had obtained. *See id.* ¶ 16. BWS (controlled by Ross Cummings) undertook all responsibility for permitting groundwater rights with the local groundwater conservation district, successfully permitted 70,993 acre-feet per year in groundwater rights, paid over $16 million in transport and production fees associated with those permits, paid over $7 million to the groundwater lessors in leasing bonuses, delay rentals, and royalties, and paid Met Water $40,000 per month to manage the assigned leases (Met Water received over $6 million in such compensation). *See id.* ¶¶ 18-20.

16. Such investments were fruitful, as BWS successfully marketed the groundwater to SAWS, through a contract with third-party Vista Ridge LLC that resulted in the construction of a 142-mile pipeline to San Antonio from a well field in Burleson County. *See id.* ¶ 23. For the SAWS project, Mr. Cummings formed Movant BWVR as a separate company. *See id.* ¶¶ 24-25. Water delivery commenced in April 2020. *See id.* ¶ 23. Over 16 billion gallons of water are to be transported each year for the benefit of San Antonio and its citizens. *See id.*

### *The Assignment of the Vista Ridge Leases*

17. There are 1,314 groundwater leases committed to the Vista Ridge project (the "Vista Ridge Leases"). *See id.* at Exhibit C, Ex. A. In 2014, as a result of Carlson's history of criminal fraud and other misconduct, Vista Ridge LLC and BWVR insisted on Met Water's assigning all its rights in the Vista Ridge Leases so

18. that the project would be insulated from Carlson and Met Water. *See id.* ¶¶ 24-25. On October 14, 2014, Met Water assigned all its rights under the Vista Ridge Leases to BWVR. *See id.* at Exhibit C.

> [Met Water] has agreed to assign to [BWVR], and [BWVR] has agreed to accept, the assignment of all of [Met Water's] right, title and interest in and to the [Vista Ridge] Leases.

*Id.* at Exhibit C, p. 1.

19. Met Water further acknowledged that BWVR would place the Vista Ridge Leases into a Trust, and that Vista Ridge LLC or BWVR would be responsible for the administration of those Vista Ridge Leases.

> To facilitate the financing of the Project, the WTPA and the Groundwater Lease Conveyance Agreement contemplate that BWVR will execute an assignment of the Leases … to the Trust … and that the Trust will … allow for the administration of the Leases by Vista Ridge [LLC] and BWVR.

*Id.* at Exhibit A, p. 2. In 2015, those agreements were executed. Met Water, which assigned all its rights in and to the Vista Ridge Leases, was intentionally excluded from the Vista Ridge project documents to protect the project from Carlson's malfeasance. *See id.* at Exhibit C. BWVR, Vista Ridge LLC, and Wilmington Trust as trustee of the Burleson/Milam Master Lease Trust (the "Trust") entered into a Trust Agreement, *see id.* at Exhibit D, and a Lease Administration Agreement naming BWVR the "Lease Administrator," *see id.* at Exhibit G.

### *The Post-Closing Agreement*

20. However, in May 2016, as a result of additional malfeasance and misconduct by the Met Water Parties (Met Water and MWVR), the Blue Water Parties (BWS and BWVR) sought and obtained the Met Water Parties' agreement to the terms of a "Post-Closing Agreement." *See id.* ¶¶ 29-41. That Post-Closing Agreement contains multiple provisions critical to the litigation of the State Court Action.

21. *First*, the Met Water Parties agreed that any Vista Ridge Leases taken by MWVR (which had been caught fraudulently taking those leases in its name even after they had been assigned to BWVR in full) would be "held in trust" for BWVR and ultimately assigned back to BWVR. *See id.* at Exhibit F § II(7). *Second*, Met Water agreed to grant BWVR "full access" to all of the Vista Ridge Lease files and to comply with Vista Ridge LLC's "sole authority" over the administration of the Vista Ridge Leases—which authority had been assigned to BWVR via the 2015 Lease Administration Agreement. *See id.* *Third*, the Blue Water Parties agreed that once commercial operations commenced in 2020, Met Water would receive its 50 percent share of the annual net project payments (BWVR was entitled to the other 50 percent share) "as and when paid to" BWVR. *See id.* at Exhibit F § II(2). *Fourth*, in return, the Met Water Parties agreed that, with respect to the payment of that 50 percent share, Met Water would not sue any person other than BWVR and would be limited to "money damages." *See id.*

22. The State Court Action exists as a result of the Met Water Parties' malfeasance. *First*, Met Water refused to give BWVR "full access" to the Vista Ridge Lease files. *See id.* ¶¶ 57-58. *Second*, after being caught fraudulently taking even more Vista Ridge Leases in its name, MWVR refused to assign those leases back to BWVR. *See id.* ¶¶ 55-56. Both actions were done in express violation of Section II(7) of the Post-Closing Agreement. *See id.* at Ex. F § II(7).

*The State Court Action*

23. The State Court Action has been in active litigation since the Blue Water Parties filed suit against Met Water over 18 months ago:

- May 2020: Blue Water Parties sue Met Water in Burleson County District Court and obtain a Temporary Restraining Order against Met Water.

- June 2020: After a full-day evidentiary hearing, the Burleson County District Court enters a Temporary Injunction against Met Water. *See* Ex. 2. The court of appeals stays Met Water's obligation to give the Blue Water Parties access to the Vista Ridge lease files, but Met Water remains enjoined from altering the lease files or the leases themselves.

- July 2020: On Met Water's motion, the suit is transferred to mandatory venue in the 21st Judicial District Court in Washington County. *See* Ex. 3.

- August 2020: The State Court grants the Blue Water Parties' motion to compel in part, requiring production of documents and answers to interrogatories. *See* Ex. 4.

- September 2020: Met Water obtains a continuance of the September 2 bench trial by filing a jury demand.

- October 2020: Unable to obtain immediate access to the Vista Ridge Lease files, the Blue Water Parties amend their pleadings to seek their damages incurred for having to hire a third party to administer and manage the 1,300-plus leases. Meanwhile, Met Water refuses to proceed with a noticed and agreed-to in-person deposition in reliance on COVID, delaying discovery.

- March 2021: Trial is set for October 18, 2021, and litigation resumes. *See* Ex. 5.

- April 2021: The Blue Water Parties amend their petition after learning of Carlson's obtaining purported groundwater deeds from various Vista Ridge lessors by means of fraudulent representations to those lessors. Meanwhile, Met Water files a new state court lawsuit in Travis County pertaining to the Post-Closing Agreement despite the State Court's dominant jurisdiction. The Travis County court denies Met Water's applications for Temporary Restraining Order and Temporary Injunction.

- July 2021: The Blue Water Parties amend their petition after learning that MWVR has taken additional Vista Ridge leases in its name and adds MWVR as a defendant. The State Court enters an anti-suit injunction against further litigation of the second-filed Travis County action. *See id.* at Ex. 6. The State Court grants in part both the Blue Water Parties' second motion to compel and Met Water's first motion to compel on discovery matters. *See* Exs. 7, 8. Carlson at last sits for an in-person deposition.

- August 2021: The State Court grants the Trust's interpleader of Met Water's 50 percent share of the annual net project payments—in the amount of $4,131,778.58—in light of the Blue Water Parties' damage claims in excess of $11 million. *See id.* at Ex. 9. The State Court enters partial summary judgment that Met Water assigned all its interest in the Vista Ridge leases and that BWVR is entitled to full access to the lease files. *See id.* at Ex. 10. Met Water deposes Mr. Cummings. The Blue Water Parties depose all three employees of Met Water. The State Court orders Carlson to show cause for why sanctions should not be imposed for his non-compliance with earlier orders granting motions to compel. *See* Ex. 11.

- September 2021: After an evidentiary hearing at which Carlson appears and testifies, the State Court finds that sanctions against Met Water are appropriate but defers the nature of such sanctions to a subsequent hearing. *See* Ex. 12.

- October 2021: The Friday before the October 7 pretrial setting, the State Court continues the trial to April 2022 on Met Water's motion for continuance.

- November 2021: Among other remaining pretrial matters, the Blue Water Parties set for November 23 Hearing (1) their request for an award of sanctions and (2) their motion for partial summary judgment on MWVR's claimed leases being held in trust for BWVR. The afternoon before the hearing, without any prior notice, the Met Water Parties file notice of an automatic bankruptcy stay.

This Court may take judicial notice of the pleadings, orders, and other events in the State Court Action, and which the Debtors filed in connection with their Notice of Removal.

### III. ARGUMENT AND AUTHORITIES

24. Movants petition this Court to abstain from hearing the State Court Action, to remand the State Court Action to the State Court, and to modify the automatic stay as necessary to allow the State Court to hear and determine all causes of action asserted by all parties.

***Abstention Pursuant to 28 U.S.C. § 1334(c)***

25. The State Court Action is subject either to mandatory abstention according to 28 U.S.C. § 1334(c)(2) or discretionary abstention according to 28 U.S.C. § 1334(c)(1).

26. Mandatory abstention is controlled by 28 U.S.C. § 1334(c)(2), as follows:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in

>a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

27. Accordingly, this Court must abstain from considering the Adversary Proceeding if a party files a timely motion requesting abstention, and the proceeding is (1) based on a state-law cause of action, (2) no other basis for federal jurisdiction, excluding bankruptcy, exists, and (3) the state court in which the matter is pending can timely adjudicate the claim. *See, e.g., In re Southmark Corp.*, 163 F.3d 925, 935 (5th Cir. 1999).

28. Here, the State Court Action is based on contract and tort claims involving matters of state law exclusively. At most, these claims are "related-to" matters, which are peripheral to the concerns of the bankruptcy case and based entirely on questions of state law. *See In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987). The federal courts would not have jurisdiction over the State Court Action by diversity or federal question. And the State Court is certainly able to adjudicate the matter in a timely manner. Before removal and commencement of the Adversary Proceeding, the State Court Action was fully developed and set for jury trial to commence on April 4, 2022.

29. Accordingly, this Court must abstain from hearing the Adversary Proceeding pursuant to 28 U.S.C. § 1334(c)(2).

30. Alternatively, this Court should exercise its discretion to abstain pursuant to 28 U.S.C. § 1334(c)(1), which provides that a bankruptcy court may permissively abstain "from hearing a proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). A bankruptcy court has "broad power to abstain whenever appropriate." *In re Wood*, 825 F.2d at 93.

31. Factors a court may consider when deciding whether to abstain include: (1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficult or unsettled nature of applicable law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy proceeding; (5) the jurisdictional basis, if any, other than § 1334; (6) the degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action. *See In re SBMC Healthcare, LLC*, 519 B.R. 172, 190 (Bankr. S.D. Tex. 2014).

32. Application of the factors of permissive abstention in this Adversary Proceeding overwhelmingly favors abstention. Debtors are but two of eight defendants, counter defendants, and third-party defendants in the State Court Action, and abstention would not affect administration of the estate because the Movants' monetary claims against Debtors would only be liquidated in the State Court Action (factor 1). All of the claims and causes of action in the Adversary Proceeding are "entirely based on state law principles to which state courts are 'better able to respond.'" *Id*. at 191, *citing In re Comtek Electronics, Inc*., 23 B.R 449, 451 (Bankr. S.D.N.Y. 1982) (factor 2). There is no jurisdictional basis whatsoever for a federal court to hear the claims asserted, and certainly no diversity or federal question jurisdiction (factor 5). The

issues raised in the State Court Action are unrelated and remote to the main bankruptcy case (factor 6). Even if the Court concludes that the claims asserted in the Adversary Proceeding are "core," the substance of the dispute consists entirely of state law causes of action (factor 7). There are no bankruptcy matters at issue in the Adversary Proceeding from which to sever the state law claims (factor 8).

33. Debtors' removal of the State Court Action and commencement of the Adversary Proceeding in this Court may be most brazenly transparent attempt by Debtors to forum shop, but it is certainly not Debtors' first attempt to move the State Court Action or the issues and parties involved in the State Court Action out of Judge Carson Campbell's court (factor 10). On May 8, 2020, the Blue Water Parties initially filed its claims against Met Water in Burleson County, Texas by intervening in an existing lawsuit, which was presided over by Judge Campbell. In that suit, Judge Campbell granted the Blue Water Parties both a Temporary Restraining Order and a Temporary Injunction against Met Water. Thereafter, Met Water filed a motion to transfer venue of that case to Travis County, Texas. At the hearing on Met Water's motion, however, Judge Campbell transferred the case instead to neighboring Washington County, where Judge Campbell would continue to preside over the suit. Thereafter, one or both of the Met Water Parties filed other related lawsuits against one or both of the Blue Water Parties and/or Wilmington Trust in venues other than Washington County to avoid Judge Campbell's court. Removing the State Court Action to this Court is only the latest attempt by Met Water Parties to forum shop.

34. Applying additional *SBMC Healthcare* factors, Movants do not consent to a jury trial in this Court, and Movants have filed their Statement Regarding Consent in this Adversary Proceeding confirming that they do not consent to entry of judgment in this Court (factor 11).

The Adversary Proceeding includes at least four non-debtor parties (factor 12). The parties have all retained counsel in the State Court Action and may be required to retain new or additional bankruptcy counsel to represent them moving forward in the Adversary Proceeding (factor 14).

35. While each of these cited *SBMC Healthcare* factors favor abstention, factors 4 and 13, a pending state court proceeding and comity, respectively, are particularly significant. The State Court Action is not only pending in the State Court, but the State Court has engaged in significant adjudication of the competing interests of the Blue Water Parties' claims against the Met Water Parties, including multiple evidentiary hearings, and in fact, the Vista Ridge project disputes were set to go to trial in mid-October but for the Met Water Parties' seeking continuance of the jury trial to April 2022. At the outset of the litigation, a full-day evidentiary hearing was held before the State Court[4] on June 8, 2020. Following that hearing, the State Court entered the requested temporary injunctive relief. The court of appeals stayed portions of that injunction (without waiting for or otherwise requesting a response on the stay from the Blue Water Parties), but Met Water and Carlson remain enjoined from taking "any action to amend, alter, modify, transfer, terminate, [or] cancel" the Vista Ridge Leases and "any action to create, destroy, relocate, amend, alter, modify, transfer, terminate, [or] cancel" and Vista Ridge Lease documents. *See* Ex. 2. The Court heard testimony from both Cummings (on behalf of the Blue Water Parties) and Carlson (on behalf of Met Water) and had the opportunity to weigh their credibility.

36. Similarly, a significant amount of discovery has been conducted in the State Court Action. The Blue Water Parties have deposed Carlson, and the Met Water Parties have deposed Cummings. The Blue Water Parties have also deposed all three employees of the Met Water

---

[4] While the suit was transferred from the Burleson County district court to the Washington County district court shortly after the Temporary Injunction was issued, Judge Carson Campbell presided over the suit in both courts.

Parties. The Court granted in part Met Water's motion to compel and performed an *in camera* review of hundreds of pages of invoices from BWVR's replacement third-party manager for the Vista Ridge Leases. *See* Ex. 8. The State Court granted in part the Blue Water Parties' motions to compel regarding discovery objections, non-production of documents, and Met Water's initial refusal to produce anyone for deposition. *See* Ex. 4; Ex. 7.

37. Further, the State Court had previously ruled on a separate request for injunctive relief. After the Met Water Parties filed a state court lawsuit in Travis County over the Post-Closing Agreement and a federal lawsuit in Austin over one of MWVR's purported groundwater leases, the Blue Water Parties obtained from the State Court an anti-suit injunction. *See* Ex. 6.[5] Tellingly, it was only *after* the Met Water Parties' attempts to evade the State Court's dominant jurisdiction via both state and federal courts that the Met Water Parties filed the Underlying Bankruptcy Case.

38. Moreover, the State Court has already entered summary judgment on several significant issues in the State Court Action. First, the State Court ruled, as a matter of law, that the assignment of the Vista Ridge Leases from Met Water to BWVR divested Met Water of any interest in those leases. *See* Ex. 10. That was significant because Met Water had repeatedly insisted it was still the "lessee" of those leases and/or had rights as "lease administrator." Second, the State Court ruled, as a matter of law, that the Post-Closing Agreement granted BWVR "full access" to all Vista Ridge Lease files. *See id.* That was significant because Met Water had repeatedly insisted that such information belonged to Met Water—and was even Met Water's *trade secret*. At the scheduled November 23 Hearing (stayed by the filing of the Underlying Bankruptcy Case) the State Court was to rule on additional motions for partial

---

[5] The court of appeals ruled that the anti-suit injunction did not require outright dismissal of the state court and federal court actions, but otherwise allowed the injunction to remain in effect against the Met Water Parties' further litigation outside the State Court Action.

summary judgment filed by the Blue Water Parties, one of which involved Met Water's claim that the Trust Agreement should be amended relating to direct payments, and the other involved whether MWVR's alleged leases were, instead, Vista Ridge leases held in trust for BWVR.

39. Yet the primary factor influencing the Met Water Parties' decision to file petitions for relief in this Court on the afternoon before the November 23 Hearing, and the resulting stay of the State Court Action, may have been the State Court's stated intent to issue discovery sanctions against Debtors and their principal, Carlson. The Blue Water Parties caught Met Water failing to produce relevant documents that had been compelled by the State Court, *see* Ex. 7, including the following:

- The State Court had ordered Met Water to produce all Vista Ridge Leases files, but Met Water refused to produce the Vista Ridge Lease files in its possession for which MWVR claimed to be the lessee;

- The State Court had ordered Met Water to produce its communications with Wilmington Trust, but Met Water refused to produce its known communications between Wilmington Trust and Met Water's attorneys;

- The State Court had ordered Met Water to produce its communications with Vista Ridge Lease lessors, but Met Water insisted (incredibly) that it had none with the over 1,300 lessors other than the single letter the Blue Water Parties had obtained; and

- The State Court had ordered Met Water to produce the groundwater deeds obtained by Carlson's entity Carrizo-Wilcox Water Development Company (which the Blue Water Parties learned were obtained by Met Water's solicitation and Carlson's false representations), but Met Water pretended to be unable to do so, even though Met Water, MWVR, and Carrizo-Wilcox Water Development Company are each fully controlled by Carlson alone.

40. After a hearing lasting almost a full day on September 9, in which Carlson was cross-examined by the Blue Water Parties' attorney Ryan Greene on these and other matters, the court concluded that sanctions would be appropriate, the precise nature of which would be decided at the next hearing:

> I adopt Mr. Greene's arguments. I do find that there was not a diligent search. I question the veracity of Mr. Carlson's

> declaration; therefore, the Court will set sanctions. What I ask that y'all do is get a date that you want to come in here, present your attorney's fees or whatever else you're requesting as sanctions. We'll have a total and complete separate hearing on that – sanctions requested.

*See* Ex. 12. The afternoon before the scheduled November 23 Hearing on those sanctions, Met Water filed a suggestion of bankruptcy in the State Court Action.

41. Any remaining *SBMC Healthcare* factors identified above are, at worst, neutral with respect to the instant Adversary Proceeding. Moreover, case law holds that this Court, in its discretion, may give greater weight to certain of these fourteen factors. *See In re SBMC Healthcare,* 519 B.R. at 192-93, *citing In re Lazar,* 200 B.R. 358, 373 (Bankr. C.D. Cal. 1996) ("No single factor is dispositive, and the decision does not turn on a counting of the number of factors on each side. Rather, a court must consider each of the factors and the evidence relating thereto, and weigh its importance in the decision on discretionary remand."). Accordingly, and in light of these factors, abstention is necessary and right.

### *Remand Pursuant to 28 U.S.C. § 1452(b)*

42. Grounds also exist for this Court to remand the Adversary Proceeding to the State Court under 28 U.S.C. § 1452(b). A bankruptcy court has broad discretion to remand a removed claim "on any equitable ground," including: (1) forum non conveniens; (2) a holding that, if the civil action has been bifurcated by removal, the entire action should be tried in the same court*;* (3) a holding that a state court is better able to respond to questions involving state law*;* (4) expertise of the particular court*;* (5) duplicative and uneconomic effort of judicial resources in two forums; (6) prejudice to the involuntarily removed parties*;* (7) comity considerations*;* and (8) a lessened possibility of an inconsistent result. *See Browning v. Navarro*, 743 F.2d 1069,

1077 n.21 (5th Cir. 1984). As set forth in great detail above, the applicable factors are either neutral or are overwhelmingly supportive of equitable remand.

43. The State Court Action's final judgment will result in a complete resolution of all issues therein, subject to this Court's disposition of any damages awarded against Debtors. The State Court is uniquely familiar with all aspects of the pending litigation as the State Court Action has been pending for almost two years and is primed for trial. The State Court is keenly familiar with the pending litigation and parties, is highly knowledgeable regarding the applicable law and underlying facts, and is therefore well suited to determine these issues. The State Court represents a conservation of judicial resources and a forum of an expeditious resolution of the pending litigation against Debtors.

*__Modification of Automatic Stay__*

44. Because cause exists, this Court should modify the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code to allow the State Court to proceed with the State Court Action, except collection of any money judgment from the Debtors.

45. Movants request that the modified stay allow Movants and the other parties to the State Court Action to resolve fully all respective rights between the parties, including but not limited to reducing to judgment the claims between the respective parties.

46. Movants request that the automatic stay be modified to allow trial to continue through all available appeals but that Movants be required to seek further order of this Court to record or seek collection of any judgment rendered against Debtors.

WHEREFORE, PREMISES CONSIDERED, Movants pray that this Court abstain from consideration of the Adversary Proceeding; that the Adversary Proceeding be remanded to the State Court; that the stay be modified to allow the State Court Action to proceed in all things,

save and except the recording and collection of any monetary judgment against Debtors; that this order is without prejudice to the rights of the parties to return to this Court to seek a modification of this order modifying the stay; and for such other and further relief to which Movants may show themselves justly entitled.

Dated: December 15, 2021.                           Respectfully submitted,

**DUBOIS, BRYANT & CAMPBELL, LLP**

By :/s/ *Seth E. Meisel*
 Seth E. Meisel
 Texas State Bar No. 24037089
 William S. Rhea
 Texas State Bar No. 16807100
 303 Colorado Street, Suite 2300
 Austin, Texas 78701
 (512) 381-8012
 (512) 457-8008 (Fax)
 smeisel@dbcllp.com

and

**TERRILL & WALDROP**

By: */s/ Paul M. Terrill III*
 Paul M. Terrill III
 State Bar No. 00785094
 Ryan D. V. Greene
 State Bar No. 2412730
 810 West 10th Street
 Austin, Texas 78701
 (512) 474-9100
 (512) 474-9888
 pterrill@terrillwaldrop.com
 rgreene@terrillwaldrop.com

**ATTORNEYS FOR MOVANTS BLUE WATER SYSTEMS, LP AND BLUE WATER VISTA RIDGE, LLC**

## CERTIFICATE OF SERVICE

  The undersigned certifies that on the 15th day of December, 2021, a true and correct copy of the foregoing document was served via the Court's CM/ECF notification system or by electronic mail and/or by regular first class mail, postage prepaid on the parties listed below.

| | |
|---|---|
| B. Weldon Ponder, Jr.<br>4408 Spicewood Springs Road<br>Austin, Texas 78759<br>Telephone: (512) 342-8222<br>Facsimile: (512) 342-8444<br>weldon@austin.rr.com | *Proposed Co-Counsel for Debtors in Possession, Metropolitan Water Company, L.P. and Met Water Vista Ridge, L.P.* |
| Catherine Lenox<br>P.O. Box 9904<br>Austin, Texas 78766<br>Telephone: (512) 689-7273<br>Facsimile: (512) 452-7273<br>clenox.law@gmail.com | *Proposed Co-Counsel for Debtors in Possession, Metropolitan Water Company, L.P. and Met Water Vista Ridge, L.P.* |
| Stephen W. Sather<br>Barron & Newburger, PC<br>7320 N. MoPac Expressway<br>Greystone II, Suite 400<br>Austin, Texas 78731<br>Telephone: (512) 916-5237<br>ssather@bn-lawyers.com<br>swsather@ecf.axosfs.com<br>lbagley@bn-lawyers.com<br>ejiminez@bn-lawyers.com | *Chapter 11 Subchapter V Trustee* |
| Shane P. Tobin<br>Office of the United States Trustee<br>shane.p.tobin@usdoj.gov<br>ustpregion07.au.ecf@usdoj.gov | *United States Trustee* |

                    */s/ Seth E. Meisel*
                    Seth E. Meisel